NOT FOR PUBLICATION                                              <u>CLOSED</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARLOS JOSE GOMEZ, | |
| Petitioner, | Civil Action No. 14-1400 (SRC) |
| v. | |
| JOHN TSOUKARIS, et al., | |
| Respondents. | <u>OPINION</u> |

**CHESLER, District Judge:**

  Petitioner is a native and citizen of Ecuador who, after being apprehended in Arizona in 2006, conceded being in the United States illegally but falsely stated that he was a native and citizen of Mexico. Thus, he was removed to Mexico in an expedited fashion under 8 U.S.C. § 1225(b). Seven years later, when he got arrested on criminal charges in New York, the immigration officials learned of his illegal reentry into the United States and served him with a notice of reinstatement of removal. When, after being offered an opportunity to contest that reinstatement, he declined to do so, he triggered his removal process. Correspondingly, on January 21, 2014, when his criminal confinement expired, he was released into immigration custody, and the immigration officials obtained his Ecuadorian passport, which rendered his removal inevitable. However, on March 2, 2014, he expressed fears of being removed to Ecuador, and the immigration officials referred him to the U.S. Citizenship and Immigration Services ("USCIS") for a reasonable fear determination, as they were required to do by 8 C.F.R. §

208.31. Petitioner already had an appropriate interview and is now awaiting the USCIS decision.

Although there are no proceedings pending before an immigration judge or the Board of Immigration Appeals ("BIA"), no petition for review of his order of removal was filed with any circuit court, and no circuit court ever entered a stay of his removal, Petitioner filed the Petition at bar styled as an application by a pre-removal-order detainee to invoke 8 U.S.C. § 1226(a) and seek a bond hearing before an immigration judge (or an outright release). See ECF No. 1. Since, under In re Joseph, 22 I & N. Dec. 799 (BIA 1999), a bond hearing should have automatically been provided to Petitioner had he been a bona fide § 1226(a) detainee, this Court directed the parties to show cause as to why his request should not be granted. See ECF No. 8. The parties complied, and the above-detailed background came to light. See ECF Nos. 9 and 11.

Apprised of Petitioner's § 1226(a) claim, Respondents contend that his detention is governed by 8 U.S.C.S. § 1231(a) and the holding of Zadvydas v. Davis, 533 U.S. 678 (2001), since his order of removal was intact and in in full force.[1]  See ECF No. 9. In Zadvydas, the Supreme Court extended the 90-day removal period by holding that aliens may be detained under § 1231(a) for "a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Mindful that this

---

[1] 8 U.S.C. § 1231(a)(1)(A) provides that the government has a ninety-day period to remove an alien ordered removed from the United States ("removal period"). This period starts on the latest of the following: (a) the date when the order of removal becomes administratively final (that is, when the appeal to the BIA was either taken and ruled upon, or the time to appeal expired); (b) if the removal order is judicially reviewed and, in addition, if a *circuit court ordered a stay of the removal*, at the date of the court's final order as to that removal; or (c) if the alien is confined (except under an immigration process), the date when the alien is released from that underlying confinement. See id. § 1231(a)(1)(B). Here, Petitioner's removal period was triggered on January 21, 2014, when he was released from his penal confinement into immigration custody.

2

holding could lead to difficult judgment calls in the courts, the Supreme Court, "for the sake of uniform administration in the federal courts," recognized a six-month "presumptively reasonable period of detention." Id. at 700-01 (emphasis supplied). However, the Court stressed, in no ambiguous terms, that even

> [a]fter this 6-month period, o[nly if] the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. . . . This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.[2] Respondents, therefore, maintain that Petitioner is not entitled to a bond hearing[3] or an outright release since he is well within his Zadvydas period and, in any event, his removal to Ecuador or an alternative country is foreseeable because the sole issue pending before the USCIS is *where* rather than *whether* he would be removed.

Traversing to Respondents' position, Petitioner raises two points, both different from that raised in his Petition. On the one hand, he still invokes § 1226(a) by alleging

---

[2] This 6-month removal period may be extended, and an alien may remain in detention during such extended period, if he "acts to prevent [his] removal." 8 U.S.C. § 1231(a)(1)(C); see also Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir. 2003) (" The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if [he] controls the clock").

[3] An outright release, even if accompanied by conditions, is the sole remedy appropriate in § 1231(a) removal-period matters. See Hany El Sayed v. Holder, Civ. No. 11-7324, 2012 U.S. Dist. LEXIS 16808, at *7-8 (D.N.J. Feb. 9, 2012); see also Zadvydas v. Davis, 533 U.S. at 700 ("the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions"). Conversely, a bond hearing is the sole remedy appropriate as to meritorious claims by pre-removal order detainees. See Hany El Sayed, 2012 U.S. Dist. LEXIS 16808, at *12-13 (citing Diop v. ICE/Homeland Sec., 656 F.3d 221 (3d Cir. 2011)).

that his order of removal is no longer final simply because he is now awaiting the outcome of his USCIS interview. See ECF No. 11, at 3.

On the other hand, he concedes being a § 1231(a) detainee but claims being entitled to habeas relief since "[i]t can be reasonably expected that the decision [by the USCIS] following [Petitioner's USCIS] interview [might] take additional ninety days, thereby pushing his [immigration] detainment period over six months." Id.

Both Petitioner's arguments are unavailing.

He cannot qualify as a § 1226(a) detainee. While the finality of his removal order could have been eliminated (and his removal period would have ended, reverting him to § 1226 pre-removal-order status) had a *circuit court ordered a stay* of his removal, and his next Zadvydas-based removal period would not have started until the circuit court would affirm his removal, see Michel v. INS, 119 F. Supp. 2d 485, 498 (M.D. Pa. 2000), nothing in the unambiguous language of 8 U.S.C. § 1231(a)(1)(B)(ii) allows this Court to equate an administrative interview by the USCIS officials with the injunctive power of a circuit court's order granting a stay.[4] Therefore, Respondents are correct that Petitioner is a removal-period alien whose detention is governed by § 1231 and Zadvydas.

---

[4] See Nken v. Holder, 556 U.S. 418, 440 (2009) ("After the removal order is final and enforceable, the alien may file a motion to reopen before the [immigration judge], see 8 U.S.C. § 1229a(c)(7), or a petition for review before the appropriate court of appeals, see § 1252(a)(1). . . . [T]he alien may [also] ask the Executive Branch to stay its own hand. See 8 CFR §§ 241.6(a)-(b), 1241.6(a)-(b). If, however, the alien wants a *court* to restrain the Executive from executing a final and enforceable removal order, the alien must seek [and obtain] an injunction . . . . See 8 U.S.C. § 1252(a)(1) (making a final order of removal subject to 28 U.S.C. § 2349(b), which provides that an 'interlocutory injunction' can 'restrain' the 'execution of' a final order") (emphasis in original); see also Singh v. AG of the United States, 288 F. App'x 33, 34 (3d Cir. 2008) (only *circuit courts* "have exclusive jurisdiction to review final orders of removal pursuant to INA Section 242(a)(1). 8 U.S.C. § 1252(a)(1) (2005), as amended by The REAL ID Act of 2005, § 106, Pub. L. No. 109-131, Div. B, 119 Stat."). Petitioner merely asked the Executive Branch to stay its own hand, and his request cannot be equated with an injunctive power

4

Petitioner's alternative position, based on § 1231, fares even worse. While he hypothesizes that his immigration custody could, eventually, exceed six months, and maintains that this should entitle him to habeas relief, he errs.[5] Since, as of now, Petitioner is within his Zadvydas period, habeas relief is foreclosed. Moreover, even if he remains in immigration custody for over six months, Zadvydas would be inapplicable to him. The analysis in Zadvydas does not turn on a mere span of time, it turns on the inverted relationship between the foreseeability of Petitioner's removal and the length of his immigration detention. See Zadvydas, 533 U.S. at 701. Here, the submissions at bar indicate that his removal is not merely foreseeable, it is forthcoming. Since he is trying to escape the imminence of his removal to Ecuador, and his prior expedited removal to Mexico indicates a possibility of alternative destinations, his § 1231 position is wholly meritless. Therefore, the Petition will be dismissed. Such dismissal will be without prejudice to Petitioner's commencing a new and separate § 2241 action in the event he

---

of a court. Had it been otherwise, the exclusive power vested in the circuit courts by the REAL ID Act would be rendered superfluous, being substitutable by an alien's mere request for an administrative interview.

[5] Neither Article III of the Constitution nor habeas law allows litigation of hypotheticals. See Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990); see also Toolasprashad v. Grondolsky, 570 F. Supp. 2d 610, 636 (D.N.J. 2008) (dismissing challenges based on hypothetical future developments as speculative and quoting, inter alia, 28 U.S.C. §2241(c)(3), with an observation that "the language of § 2241 is set forth in present rather than in future terms, i.e., it reads: 'The writ of habeas corpus shall not extend to a prisoner unless . . . he is [rather than will be] in custody in violation of the Constitution or the laws or treaties of the United States'").

develops a <u>bona</u> <u>fide</u> claim in light of the guidance provided to him herein. An appropriate Order follows.

                                                                                         **Stanley R. Chesler**
                                                                                         **United States District Judge**

Dated: 5/27/14